1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DONOVIN LAST, *an individual, on behalf of himself and all others similarly situated*,

Plaintiff,

v.

M-I, L.L.C.,

Defendant.

Case No.  1:20-cv-01205-ADA-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION BE GRANTED IN PART AND DENIED IN PART; DEFENDANT'S OBJECTIONS BE OVERRULED, AND DEFENDANT'S MOTION TO STRIKE THE DEPOSITION ERRATA SHEETS OF MICHAEL A. KAVELER AND NATHAN WILLIAM GHOLZ BE DENIED

(ECF Nos. 38, 53, 57)

OBJECTIONS, IF ANY, DUE IN 21 DAYS

Plaintiff Donovin Last seeks class certification in this action based on numerous California state labor claims. (ECF No. 38). Defendant filed an opposition to Plaintiff's motion (ECF No. 52). Defendant also filed a motion to strike the deposition errata sheets submitted by two of Plaintiff's witnesses (ECF No. 57), which Plaintiff opposed (ECF No. 64). The matter was referred to the undersigned pursuant to 28 US.C. § 636 and Local Rule 302.

For the following reasons, the Court will recommend that Plaintiff's motion for class certification be granted in part, and denied in part and that Defendant's motion to strike be denied.

//

1

1

## I.      PROCEDURAL BACKGROUND

2

On July 29, 2020, Plaintiff initiated this action by filing a complaint in California state

3

court. Defendant filed a timely notice of removal on August 26, 2020. (ECF No. 1). Defendant

4

filed an amended answer to Plaintiff's first amended complaint. (ECF Nos. 21, 22).

5

Plaintiff's amended complaint alleges that Defendant misclassified its drilling fluid

6

specialists as either exempt employees or as independent contractors rather than classifying

7

drilling fluid specialists as non-exempt employees. (ECF No. 1-1, p. 20). As a result of this

8

misclassification, Plaintiff alleges that Defendant failed to pay overtime, to provide meal and rest

9

periods, to pay meal and rest period premiums, to pay waiting time wages, and to provide legally

10

sufficient wage statements as required by California law. (*See* ECF No. 1-1, p. 23-29). Based on

11

Defendant's violations of California labor law, Plaintiff asserts a claim for restitution and

12

declaratory relief on behalf of himself and proposed class members pursuant to California

13

Business and Professions Code Section 1700, *et seq.* (ECF No. 1-1, p. 30). Plaintiff also seeks to

14

recover civil penalties under California's Private Attorney General Act ("PAGA"). (ECF No. 1-1,

p. 31).

15

As set forth in Plaintiff's amended complaint, Plaintiff seeks to represent a class that

16

includes all drilling fluid specialists who worked as employees of Defendant or provided services

17

on behalf of Defendant in California during the applicable timeframe. (ECF No. 1-1, p. 21).

18

Plaintiff also seeks to represent two subclasses: a wage statement subclass and a Section 203

19

subclass (i.e., waiting time wages). (*Id.*)

20

On January 11, 2022, Plaintiff filed a motion for class certification. (ECF No. 38).

21

Defendant filed an opposition to Plaintiff's class certification motion on May 20, 2022. (ECF No.

22

52). Defendant also filed objections to Plaintiff's class certification motion. (ECF No. 53). On

23

June 17, 2022, Plaintiff filed a reply to Defendant's opposition (ECF No. 67) and a response to

24

Defendant's objections (ECF No. 68). Defendant was granted leave to file a sur-reply. (ECF Nos.

25

71 & 72).

26

On May 20, 2022, Defendant filed a motion to compel arbitration. (ECF No. 55).

27

Defendant's motion to compel argues that Plaintiff's claims against Defendant are subject to an

28

arbitration agreement between Plaintiff and SGF US LLC, the staffing company that provided

Plaintiff to Defendant. (Id.) The motion to compel arbitration is currently pending before District Judge Ana de Alba. (*See* ECF Nos. 56, 79, 81).

On May 23, 2022, Defendant filed a motion to strike the deposition errata sheets of Michael A. Kavelar and Nathan William Gholz. (ECF No. 57). Plaintiff filed an opposition to the motion to strike on June 6, 2022. (ECF No. 64). Defendant filed a reply on June 15, 2022. (ECF No. 66).

A hearing on the motion for class certification and the motion to strike was held on August 12, 2022. (ECF No. 76). Peter Dion-Kindem and Lonnie Blanchard appeared on behalf of Plaintiff. (Id.) Heather Hearne appeared on behalf of Defendant. (Id.)

After the hearing, the Court directed Plaintiff to file an amended statement regarding the proposed class definitions and the estimated membership of each class. (ECF No. 77). Plaintiff filed an amended statement on August 18, 2022. (ECF No. 78). Defendant filed objections to Plaintiff's amended statement on August 25, 2022. (ECF No. 80).

## II.     MOTION TO STRIKE

### A.     Background

On May 23, 2022, Defendant filed a motion to strike the deposition errata sheets of Michael A. Kavelar and Nathan William Gholz. (ECF No. 57). Defendant argues the motion should be granted as the errata sheets fail to satisfy the requirements of Federal Rule of Civil Procedure 30(e) because they do not provide reasons for the changes made. (*Id.* at 3). Further, because the changes contradict testimony that is material to Plaintiff's claims on the merits and arguments made in the motion for class certification, Defendant asserts the errata sheets should be stricken under the sham rule. (*Id.* at 8).

Plaintiff's opposition argues that the deposition errata sought to clarify the relevant testimony. (ECF No. 64, p. 1). Because Defendant fails to explain how the changes contradict or reverse Mr. Kaveler and Mr. Gholz's testimony, Plaintiff contends the motion to strike should be denied. (*Id.* at 2). As for the technical requirements of Rule 30(e), the declaration of Plaintiff's counsel explains that the original errata sheets did not provide reasons for the changed due to counsel's own inadvertence. (ECF No. 64-1, p. 2). Plaintiff's opposition includes as exhibits amended errata sheets that include reasons for the changes. (*See* ECF No. 64-1, p. 4-7, 9-10).

In reply, Defendant argues that Plaintiff's amended errata sheets do not cure the technical deficiencies of the originally submitted errata because Rule 30(e) requires "strict compliance." (ECF 66, p. 2). Defendant generally addresses some of the changes noted in the amended errata sheets provided by Plaintiff by asserting that "none of the changes [highlighted] are corrective in nature." (*Id.* at 7). Further, Defendant argues that the errata sheets should be stricken because Plaintiff's amended submissions are an improper attempt to further argue objections made by Plaintiff's counsel during the deposition. (*Id.* at 9).

### B.     Legal Standards

Federal Rule of Civil Procedure 30(e) provides that:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

"In the Ninth Circuit, Rule 30(e) deposition errata are subject to the 'sham rule,' which precludes a party from creating 'an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp.2d 1218, 1224–25 (W.D. Wash. 2014), *quoting Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (internal citations omitted). "While the language of [Rule] 30(e) permits corrections in 'form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d at 1225. To determine "whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections fundamentally change the prior testimony, the impact of the corrections on the cases (including whether they pertain to dispositive issues), the timing of the submission of corrections, and the witness's qualifications to testify." *Karpenski*, 999 F. Supp.2d at 1224–25 (*citing Lewis v. The CCPOA Benefit Trust Fund et al.*, 2010 WL 3398521, at *2 (N.D.Cal. Aug. 27, 2010)).

//

//

4

**C.      Analysis**

Upon review of the amended deposition errata sheets, the Court finds that the amended deposition errata are within the scope of Rule 30(e). Accordingly, the Court will recommend that Defendant's motion to strike be denied.

As an initial matter, Court does not find that the deposition errata sheets should be stricken for failure to comply with the technical requirements of Rule 30(e). Plaintiff's amended deposition errata sheets include reasons for the changes that allow the Court to make "an assessment concerning whether the alterations have a legitimate purpose." *See Hambleton*, 397 F.3d at 1224-25; *see also Quidel Corp. v. Siemens Medical Solutions USA, Inc.*, 2019 WL 13171280, at *2 (S.D. Cal. Jul. 29, 2019) (district court substantively reviewed corrections when plaintiff's opposition to motion to strike attached amended depositions errata sheets that included statement of reasons).

When considering the relevant factors, the Court does not find the sham rule applicable to Plaintiff's amended deposition errata sheets. Here, the number of corrections at issue is not so extensive as to suggest an improper motive. Defendant's reply brief only highlights eleven out the twenty-three corrections as outside the scope of Rule 30(e). Some of the changes challenged by Defendant touch on issues relevant to Plaintiff's claims regarding the job duties and responsibilities of drilling fluid specialists:

> They would have their opinions on what my duties should be. ***The company man was my boss.***
>
> This change is to clarify that, because the company man is one of the bosses of mud men at the drill site, he has the right to tell them what to do.
>
> . . .
>
> Some days it would be 30 minutes. You could do an hour, up to two hours, ***sometimes more,*** depending on what is going on.
>
> This change clarifies that there were sometimes circumstances when I would talk to the company man or the tool pusher for longer than two hours.
>
> . . .
>
> I would say I could author like the local mixing plan, which was an extension of the mud program, ***and get approval from management about anything outside of the mud program.***

This change clarifies that management had input and approval related to the local mixing plan when things were outside of what was specified the mud program.

. . .

It varies. The process to get the information doesn't vary too much, but it depends on what is going on. ***But the goal is the same – to keep the mud within the specifications of the mud program.***

This change clarifies what the goal of a treatment plan is when contaminants are found.

. . .

Yeah, depending on the system. The smaller systems you can just kind of throw it in and let is even out over time. Larger systems, you have to put it in slower, so that way it goes in evenly. ***But it is the same in the sense of the solution is to add materials to the well.***

This change clarifies that the primary solution for both smaller systems and larger systems is to add materials.

. . .

Not sure what else to think about. Testing, cutting sacks occasionally. ***Taking samples, working on inventory of material, getting materials also.***

This change clarifies that there were other manual activities that were performed.

(ECF No. 66, p. 5-7).

However, these minor clarifications do not fundamentally alter the prior testimony of Mr. Gholz or Mr. Kaveler. Further, the timing of the corrections does not arouse suspicion. Plaintiff filed his motion for class certification before either Mr. Kaveler or Mr. Gholz had been deposed, and both errata sheets were submitted shortly after the depositions took place. (*See* ECF No. 57, p. 3). As for the final factor, whether the qualifications of the witnesses to testify weigh in favor of striking, the Court finds that this factor is neutral because Mr. Kaveler and Mr. Gholz did not testify as expert witnesses.

Further, the Court finds that the changes reflected in the deposition errata do not contradict the original testimony. *See Karpenski*, 999 F.Supp.2d at 1224 (*citing Hambleton*, 397 F.3d at 1226) ("Even where a court finds that errata are not shams, the court may still strike portions that constitute contradictory rather than corrective changes."). Out of over twenty changes, Defendant only points to a single instance where Defendant argues the correction

6

resulted in a contradiction:

> Gholz testified in deposition that there are differences in the tests used in a waterbased system versus a synthetic or oil-based system and explained the basic variations between these tests. Now, Gholz seeks to "clarify" his testimony and asserts that "the same kinds of general testing methods are used." This is not a clarification. This change directly contradicts Gholz's deposition testimony and is clearly a purposeful rewrite tailored to better align with Plaintiff's overgeneralization of drilling fluid specialist's responsibilities, which ultimately supports the commonality factor of Plaintiff's motion for class certification.

(ECF No. 66, p. 7). The fact that water-based and oil-based systems employ the same general testing methods does not contradict the facts established by Mr. Gholz's sworn testimony regarding differences based on the type of equipment used and the additional requirements of oil-based systems. *See Tourgeman v. Collins Financial Services, Inc.*, 2010 WL 4817990, at *2 (S.D. Cal. Nov. 22, 2010) ("Changing 'yes' to 'no' and 'correct' to 'no not correct' are paradigmatic examples [of] contradiction, rather than correction."), *citing Hambleton*, 397 F.3d at 1226.

For those reasons, the Court finds that the deposition errata sheets are within the scope of Rule 30(e). Thus, the Court recommends that Defendant's motion to strike be denied.

## III.   MOTION FOR CLASS CERTIFICATION

### A.   Plaintiff's Amended[1] Proposed Class Definitions

Plaintiff seeks certification of the following proposed classes:

**Class 1.**

All persons who at any time from May 20, 2016 to the date of certification worked as employees of M-I, L.L.C. or provided services on behalf of M-I, L.L.C. in California in job positions titled "Drilling Fluid Specialist" (mud man, Levels I-IV and mud man Senior), mud engineer," "mud man," "mud man Trainee," "mud man consultant" and/or equivalent job titles who have not released all claims asserted in this action and who are not subject to an arbitration agreement applicable to the services such person provided on behalf of M-I, L.LC in California during the class period.

**Class 2. Section 203 Subclass**

All members of Class 1 who at any time during the period beginning on May 20, 2017 and ending on the date of certification were either voluntarily or involuntarily separated from their employment with or stopped providing services on behalf of M-I, L.L.C.

---

[1] Defendant's opposition argues that Plaintiff's estimated class numbers as set forth in the motion for class certification are inaccurate because they include putative class members who have signed arbitration agreements or waived their right to participate in collective action against Defendant. (ECF No. 52, p. 33). After hearing oral argument from the parties, the Court ordered Plaintiff to file an amended statement of the proposed class definition as well as revised class membership numbers. (ECF No. 77).

**Class 3. Wage Statement Subclass**

All members of Class 1 who at any time during the period beginning on May 20, 2019 and ending on the date of certification were either not provided with a wage statement by M-I, L.L.C. or who were provided with a wage statement that did not accurately reflect all of the information required by Labor Code Section 226(a).

(ECF No. 78, p. 1-2). Plaintiff states that, based on data and information provided by Defendant, there are "[a]t least" 47 members in Class 1; 34 members in Class 2; and 12 members in Class 3. (Id. at 2). These figures are revised from the estimates provided in Plaintiff's motion for class certification that were based on the declaration of Plaintiff's expert, Jason Regus[2]. (*See* ECF No. 38-1, p. 28). Mr. Regus's sworn declaration explains that he "reviewed work and pay records produced by [Defendant], its customers and its [drilling fluid specialist] suppliers as well as legal filings including responses to interrogatories" to determine the number of drilling fluid specialists who worked for Defendant during the four-year class period. (ECF No. 38-4, p. 2).

### B.      Summary of Plaintiff's Position

Plaintiff worked as a drilling fluid specialist for Defendant in 2019 and 2020. (ECF No. 38-5, p. 2). Plaintiff was provided to Defendant by a staffing company, SGF, Inc. (ECF No. 38-1, p. 7). Defendant then assigned Plaintiff to Defendant's customer, California Resources Corporation. (*Id.*) According to declarations by Plaintiff and other drilling fluid specialists, the basic job of a drilling fluid specialist is to take fluid samples from drilling wells and test the samples to ensure the fluid is within the specifications of the drilling fluid program for that well. (*Id.* at 8).

Plaintiff's primary allegation is that Defendant failed to classify drilling fluid specialists as non-exempt employees. (ECF No. 38-1, p. 7). Defendant's liability for the various labor-law violation claims asserted in Plaintiff's complaint is premised on this misclassification. (*See id.*) Plaintiff alleges that Defendant improperly treated direct employee drilling fluid specialists as exempt employees. (*Id.*) Further, Defendant treated the drilling fluid specialists hired from third-

---

[2] Defendant challenges the declaration of Mr. Regus as inadmissible on the basis that Mr. Regus is not competent to testify as an expert, class numerosity is not a matter of expert opinion, and the declaration relies on inadmissible hearsay. (ECF No. 53). In response, Plaintiff argues that Mr. Regus's testimony relies on documents that would be admissible as party admissions because they were produced by Defendant in this action, as well as documents produced in other litigation to which Mr. Regus has personal knowledge. (ECF No. 68). The Court will recommend that Defendant's objections be overruled because the relevant information for purposes of this motion comes from Defendant's documents. The Court is not relying on Mr. Regus's opinion on the legal question of class numerosity.

party providers as independent contractors when they should have been treated as employees due to the level of control Defendant exercised over the contractor drilling fluid specialists' hours and working conditions. (*Id.* at 13). Plaintiff alleges that Defendant's drilling fluid specialists— whether directly employed or employed under contract—should have been classified as Defendant's non-exempt employees under California law. (*Id.* at 7).

According to Plaintiff, because Defendant's drilling fluid specialists had the same job duties and responsibilities, whether the job duties and responsibilities of the proposed class members satisfy any California exemption can be determined on a class wide basis (ECF No. 38-1, p. 32). Thus, Defendant's liability for labor code violations regarding overtime, rest periods, meal periods, wage statements, and waiting time penalties, can resolved by common proof. (*Id.* at 29). For this reason, Plaintiff argues that the commonality requirement of Federal Rule of Civil Procedure 23(a) is satisfied. (*Id.* at 32).

As to for the numerosity requirement, Plaintiff argues that "each of the classes is sufficiently numerous and the class members' identities are ascertainable." (ECF No. 38-1, p. 28). Plaintiff's claims are typical to those of the proposed class because they "arise from the practice and course of conduct that gives rise to the class claims of all class members." (*Id.* at 33).

Regarding adequacy, Plaintiff contends that he is an adequate representative because he does not have any conflicts of interest with any other class members and is prepared to fulfill the role and duties of class representative. (*Id.* at 33-34). Additionally, Plaintiff's counsel is unconflicted, competent, experienced in class action litigation, and has worked extensively in this matter. (*Id.* at 34).

Plaintiff also argues that class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3). (ECF No. 38-1, p. 34- 36). As for the predominance requirement, Plaintiff argues that Plaintiff's substantive claims, and likewise Defendant's exemption defense, are subject to common proof (i.e., the conduct of Defendant) rather than individualized evidence. (*Id.* at 35; *see id.* at 14-27). As for the superiority requirement, Plaintiff contends that this requirement is met because individual litigation is not feasible, and a class-wide trial is manageable. (*Id.* at 35).

//

### B.     Summary of Defendant's Position

As a threshold issue, Defendant argues that drilling fluid specialists cannot be viewed as a cohesive class because the job duties and responsibilities of Defendant's drilling fluid specialists varied dramatically based on circumstance. (ECF No. 52, p. 15). In support of this argument, Defendant points to numerous factors such as experience level, whether the drilling fluid specialists worked on an onshore or offshore rig, level of supervision, level of interaction with Defendant's customer, how often the drilling fluid specialist's recommendations were followed by the customer, and whether the customer required a water or oil-based drilling fluid. (*Id.* at 16-19). Because the job duties and responsibilities were not consistent, Defendant argues that the question of whether or not a drilling fluid specialist was misclassified as exempt requires individualized proof. (*Id.* at 37). According to Defendant, Plaintiff's proposed classes generally fail to satisfy the commonality prerequisite on that basis. (*Id.*)

Defendant also argues Plaintiff's proposed class definitions are flawed because they lump together direct employees and contract employees. (*See* ECF No. 80, p. 3-5). Defendant asserts that each proposed class should be further classified as follows: members who worked as a contract drilling fluid specialist, members who worked as a direct employee drilling fluid specialist, and class members who worked as both. (*Id.*) Further, there are differences based on whether a contract drilling fluid specialist was supplied by a staffing company or whether they contracted with Defendant directly. When properly classified, Plaintiff's proposed class definitions fail to meet the numerosity requirement of Rule 23(a). (*Id.* at 3).

Defendant provides several reasons why Plaintiff's claims are not typical to the proposed classes. (ECF No. 52, p. 34- 35). Plaintiff is the only proposed class member who was staffed by Defendant in California through SGF, and as Defendant argues, Defendant is subject to an arbitration agreement. (*Id.* at 34). Further, Plaintiff is pursuing multiple actions based on similar legal theories where his claims and incentives are adverse to other class members. (*Id.* at 35). For those same reasons, Plaintiff is an inadequate class representative. (*Id.* at 35-26).

Defendant argues that common questions do not predominate because Defendant's liability to individual class members is dependent on different tests. (ECF No. 52, p. 22-31). First, Defendant argues that the legal question of whether an individual worker was appropriately

classified as an independent contractor is subject to two different tests depending on whether a joint employment situation exists. (*Id.* at 22). For this reason, along with the compounding fact that contract drilling fluid specialists do not perform the same duties, whether a contract drilling fluid specialist was misclassified as an independent contractor must be decided on a case-by-case basis. (*Id.* at 13).

Second, Defendant argues that whether a direct employee was appropriately classified as exempt is subject to four different exemptions that "cannot be proved or disproved on a class wide basis." (ECF No. 52, p. 25). Further, "[b]ecause the exemptions are affirmative defenses and [Defendant] can ultimately choose to pursue one or all, Plaintiff must establish that common issues predominate as to all the exemptions in order to certify a class." (*Id.* at 25, n 26). As such, due to the numerous differences among drilling fluid specialists, Plaintiff cannot show that the administrative exemption can be determined on a class wide basis. (*Id.* at 27).

Additionally, Defendant argues that Plaintiff fails to establish that the proposed classes are manageable, and that class adjudication is superior under the relevant factors of Rule 23(b)(3). (ECF No. 52, p. 31-32). Specifically, Defendant argues that class adjudication is not appropriate in this matter because Plaintiff is pursuing claims against multiple entities in different lawsuits based on the same misclassification theory, which presents a risk of inconsistent adjudication. (*Id.* at 32). Further, a class action in this case would not be manageable because "the Court would need to hold mini-trials to determine whether each sub-set of [drilling fluid specialists] was properly classified." (*Id.*)

## IV.    LEGAL STANDARDS FOR CLASS CERTIFICATION

For class certification, the proposed class must satisfy the four threshold requirements of Federal Rule of Civil Procedure 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). The goal of Rule 23(a) is to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The Rule's four requirements—numerosity, commonality,

typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (internal quotation marks and citations omitted).

In addition to the requirements of Rule 23(a), "the proposed class must satisfy at least one of the requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Pursuant to Rule 23(b)(3), a court may certify a class only if it determines that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]." *Dukes*, 564 U.S. at 350. Further, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23]." Fed R. Civ. P. 23(c)(5); *see also Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) ("This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.").

The Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest in the certification question." *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). However, Rule 23(b)(3) only "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23(a) are satisfied by a preponderance of the evidence.").

V.    **CLASS CERTIFICATION ANALYSIS**

   A. **Class One**

      1. **Rule 23(a) Requirements**

         a. *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable."

1  Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts

2  of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment*

3  *Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (noting that a class with only 15 members

4  "would be too small to meet the numerosity requirement"). Courts in the Ninth Circuit have

5  found the requirement satisfied when the class is composed of as few as thirty-nine members. *See*

6  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (*citing Jordan v. L.A.*

7  *County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and

8  seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459

9  U.S. 810, 103 (1982)).

10         Here, Plaintiff's proposed Class 1 includes 47 members. (ECF No. 78, p. 1). This figure is

11  sufficiently numerous that joinder of all class members is impracticable. As discussed further

12  below, the Court finds that the exemption issue presented by Plaintiff's overtime, meal period,

13  and rest period claims is subject to common proof, despite differences in the employment

14  relationship between Defendant and individual class members, based on the common job duties

15  and responsibilities of all drilling fluid specialists. Thus, further subdivision based on the

16  employment relationship is unnecessary. Accordingly, the Court finds that the numerosity

17  requirement of Rule 23(a)(1) is satisfied as to Class 1.

                    **b.  *Commonality***

18         Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

19  R. Civ. P. 23(a)(2). Commonality does not require class members to "have all suffered a violation

20  of the same provision of law." *Dukes*, 564 U.S. at 350. A common question "must be of such a

21  nature that it is capable of classwide resolution—which means that determination of its truth or

22  falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

23  *Id.* "By contrast, an individual question is one where members of a proposed class will need to

24  present evidence that varies from member to member." *Olean*, 31 F.4th at 663 (*citing Tyson*

25  *Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)). "Commonality is necessarily established where

26  there is a class-wide policy to which all are class members are subjected." *Owino v. CoreCivic,*

27  *Inc.*, 36 F.4th 839, 845 (9th Cir. 2022) (*citing Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir.

28  2014)). Further, "[e]ven a single common question of law or fact that resolves a central issue will

                                            13

be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) (*citing Dukes*, 564 U.S. at 350). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.*

Here, Plaintiff has identified several common issues of law and fact, including whether the putative class members were exempt, and if so, on what basis. Plaintiff has submitted declarations from putative class members that describe the job duties and responsibilities of drilling fluid specialists as identical regardless of the customer, type of rig, or fluid system. (*See* ECF Nos. 38-5, 38-6, 38-7, 38-8). Those declarations also attest to the fact that Defendant required its drilling fluid specialists to work 12 or 24 hour shifts without meal or rest periods and without receiving any compensation for overtime or meal and rest period premiums. (ECF No. 38-5, p. 4, 6; ECF No. 38-6, p. 4, 6; ECF No. 38-7, p. 4, 6-7; ECF No. 38-8, p. 4,6). Defendant's documents indicate the job duties for all positions labeled "Drilling Fluid Specialist" are the same. (*See* ECF No. 38-2, p. 60-80). Additionally, Defendant's own witness, Mr. Shamblin, testified in deposition that the job duties of a drilling fluid specialist directly employed by Defendant were "generally the same" as those of a contract employee drilling fluid specialist. (ECF No. 38-2, p. 92). Further, Mr. Shamblin testified that Defendant treated directly employed drilling fluid specialists as exempt employees. (*Id.* at 91).

Defendant's principal argument against certification of Class 1 is that the exemption question central to Plaintiff's claims must be decided on an individual basis under different tests. Defendant argues that "the threshold question of whether Direct [drilling fluid specialists] satisfy the administrative, professional, combination, or outside sales exemptions cannot be proved or disproved on a class wide basis." (ECF No. 52, p. 25). Defendant claims that "Plaintiff must establish that common issues predominate as to all the exemptions in order to certify a class." (*Id.* at 25, n 26). Further, Defendant contends that a common exemption classification policy cannot support certification. (*Id.*) (*citing Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)).

14

Regarding the threshold exemption issue, the Court finds that common questions predominate over individual issues because Plaintiff has demonstrated the exemption question is subject to common proof. In making this determination, the Court is aware that Defendant was party to another case, *Syed v. M-I, L.L.C.*, No. 1:12-cv-1718-AWI-MJS, where a putative class of drilling fluid specialists claimed they were not paid in accord with the Fair Labor Standards Act and California labor law. *See Syed v. M-I, L.L.C.*, 2014 WL 6685966, at * 1 (E.D. Cal. Nov. 26, 2014). The *Syed* plaintiffs filed a motion for conditional certification of the FLSA claims. In the order adopting findings and recommendations, District Judge Anthony W. Ishii discussed the exemption issue in the context of the FLSA "similarly situated" standard:

> Defendant argues "the Magistrate [Judge] did not discuss the potential exemption(s) at issue, let alone consider how common evidence can be used to show that hundreds or thousands of mud engineers, who worked at drilling rigs located throughout the United States, were uniformly misclassified as exempt." Defendant makes scattershot arguments regarding the exemptions. Defendant does not go into detail on any of them, choosing instead to provide vague speculations as to how they potentially could apply to mud engineers. Examining the exemptions directly does not support Defendant's assertion of dissimilarity. The salient legal question is whether these employees were properly classified as exempt under FLSA. So long as all of the proposed class members are together on one side of the line (either all exempt or all not exempt), they are similarly situated for class certification purposes. FLSA states that employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from the "minimum wage and maximum hour requirements." Defendant argues that only analysis of individual job experiences can determine whether each potential class member was properly classified. However, there is no evidence at this point that these employees' duties differed such that they would fall on opposite sides of that legal line.

2014 WL 6685966, at * 5 (E.D. Cal. Nov. 26, 2014).

This case differs from *Syed* in that the proposed class includes drilling fluid specialists who were not directly employed by Defendant. The Court is also aware that the FLSA standard for conditional class certification is not the same as Rule 23(a)'s commonality inquiry (or the related, but more searching, Rule 23(b)(3) predominance inquiry). However, the Court finds Judge Ishii's analysis instructive. Regardless of what test applies on the merits of the exemption issue, Plaintiff has provided evidence that the job duties of drilling fluid specialists are sufficiently the same so that the exemption question is apt to generate common answers. Moreover, the exemption question is central to determining Defendant's liability for the overtime,

meal period, and rest period claims asserted by Plaintiff's complaint. As Plaintiff has provided evidence that Defendant's drilling fluid specialists were subject to the same working conditions in terms of shifts, meal breaks, and rest breaks, the Court finds that the question of Defendant's liability presents a common issue capable of class-wide resolution.

As discussed further below, the Court appreciates that whether a contract drilling fluid specialists was misclassified as exempt involves an additional question as to whether those specialists were Defendant's employees. However, for the purposes of Rule 23(a), Plaintiff's overtime, meal period, and rest period claims present questions of law and fact common to the entire class such as whether drilling fluid specialists were properly treated as exempt and whether Defendant's practice of not paying drilling fluid specialists overtime or meal and rest period premiums violated state labors laws. Accordingly, the Court finds the commonality requirement satisfied. *See Hanlon*, 150 F.3d 1011 at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-CV-00606-DAD-EPG, 2017 WL 3173006, at *6 (E.D. Cal. July 26, 2017) (finding commonality requirement met for similar Labor Code claims).

### c. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, "a named plaintiff's motion for class certification should be denied if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon*, 976 F.2d at 508 (citations

1    omitted).

2         Defendant contends that Plaintiff cannot show that his claims are typical to the class

3    because he is subject to an arbitration agreement and the proposed class, by definition, excludes

4    individuals subject to arbitration. (ECF No. 52, p. 34).  Plaintiff, of course, argues that the

5    arbitration agreement does not apply. (ECF No. 67, p. 9-10). Defendant's motion to compel

6    arbitration is yet to resolved, and the merits of the parties' arguments regarding the enforceability

7    of the arbitration agreement is not before the undersigned. Thus, whether Plaintiff is subject to a

8    unique defense is speculative at this time.

9         Defendant also argues that Plaintiff's claims are atypical because Plaintiff is advancing

10   the same legal claims in other cases against Defendant, the staffing company that provided

11   Plaintiff to Defendant, and Defendant's customer. (ECF No. 52, p. 35). Defendant contends that

12   Plaintiff has interests in advancing certain theories in those cases, such as emphasizing the extent

13   of control exercised by Defendant's customer, that are antithetical to the theories advanced in this

14   case. (*Id.*) In reply, Plaintiff argues that the positions taken in these other cases are not

15   inconsistent because, under California case law, "joint employers are equally responsible for

16   labor code violations." (ECF No. 67, p. 10). Defendant's sur-reply argues that joint employers can

17   only be liable for their own omissions. (ECF No. 71, p. 6). The Court finds that Plaintiff is

18   sufficiently typical notwithstanding these other lawsuits. Defendant does not point to any

19   statements or claims made so far that are inconsistent, and Plaintiff set forth a theory of liability

     that is fully consistent. Thus, any potential inconsistencies are speculative.

20        Here, Plaintiff's overtime, meal period, and rest period claims pose the same legal

21   argument, that Defendant misclassified drilling fluid specialists as exempt, as the other putative

22   class members. Further, Plaintiff's claims arise from the same course of conduct typical to other

23   Class 1 members: Defendant's failure to compensate drilling fluid specialists for overtime or pay

24   meal and rest break premiums. Thus, the Court finds that Plaintiff's claims are typical because

25   they are reasonably coextensive with those of the proposed Class 1 members.

26        **d.  *Adequacy***

27        Before the Court can certify a class, the Court must be satisfied that "the representative

28   parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]

class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

Here, Defendant does not challenge the adequacy of Plaintiff's counsel, Mr. Dion-Kindem and Mr. Blanchard. (ECF No. 52, p. 36). The declarations provided by Plaintiff's counsel represent that the named counsel do not have any known conflicts with other class members, and that Plaintiff's counsel are experienced and able to prosecute the matter vigorously on behalf of the class. (ECF No. 38-2, p. 2-4; ECF No. 38-3, p. 2-4). As such, the Court is satisfied that Plaintiff's counsel is adequate.

### 2. Rule 23(b) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

### a. *Predominance*

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* As set forth by the Supreme Court,

18

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (internal citations and quotation marks omitted).

Plaintiff seeks to certify proposed Class 1 with respect to his overtime, meal period, and rest period claims. Defendant argues common questions do not predominate because the exemption issue requires individualized analysis as to each possible exception. (ECF No. 52, p. 25). Additionally, Defendant contends that a common exemption classification policy cannot support certification. (*Id.*) (*citing Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)). Further, Defendant argues that common issues do not predominate because some class members—those who contracted with Defendant directly or were provided to Defendant by a third party—must establish whether they were Defendant's employee under either the "ABC" independent contractor test or the "suffer/permit" joint employment test. (ECF No. 52, p. 22- 25).

As discussed above in reference to the commonality requirement, the Court finds that the evidence provided by Plaintiff that drilling fluid specialists performed the same job duties indicates the exemption issue is subject to common proof. Further, the Court finds that Plaintiff offers other evidence relevant to the predominance inquiry in addition to Defendant's exemption policy. In *Vinole*, the Ninth Circuit held that class certification was not warranted when the district court relied on "an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." 571 F.3d at 947; *see also In re Wells Fargo*, 571 F.3d at 958, 956 ("heavy reliance" on uniform exemption policy misplaced because there were "serious issues regarding individual variations among [employees'] job duties and experiences"). Here, Plaintiff is not relying solely on a blanket exemption policy. Plaintiff has submitted evidence that drilling fluid specialists perform the same job and follow the same standardized testing procedures and safety protocols. The evidence also includes deposition testimony from Defendant's own person-most-knowledgeable that drilling fluid specialists had generally the same responsibilities.

Further, while some putative class members are subject to an additional independent contractor question, the Court does not find that this defeats predominance. The overtime, meal period, and rest period claims of the proposed Class 1 members all depend on a common question—whether Defendant misclassified drilling fluid specialists as exempt employees. Defendant's liability as to those claims is dependent on whether Plaintiff and other class members were misclassified as exempt, and not whether they were all misclassified as non-employees.

For those reasons, the Court finds that common issues predominate as to Class 1.

### b. *Superiority*

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to this finding include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616.

Regarding the first factor, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), when smaller dollar amounts are in controversy, this factor generally favors certification. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001). Here, given the nature of the alleged labor violations, the potential individual recovery could be valuable. However, it is not evident to the Court that the value of the individual claims "outweigh the costs of litigations given the complexity of the case." *Evans v. Zions Bancorporation, N.A.*, 2022 WL 3030249, at * 5 (E.D. Cal. Aug. 1, 2022). For that reason, the Court finds that the first factor favors class-wide adjudication.

As for the second factor, "the extent and nature of any litigation concerning the controversy already begun by or against class members," the Court finds that this factor weighs slightly against class certification given the fact that Plaintiff has initiated other cases alleging similar claims. However, those cases concern different defendants. Moreover, Defendant has not indicated that resolution in those other cases would resolve the issues presented in this case.

The third factor favors class certification because Plaintiff alleges claims brought under California law arising from Defendant's conduct within California. *See Blackwell v. Com. Refrigeration Specialists, Inc.*, 2022 WL 10626473, at *6 (E.D. Cal. Oct. 18, 2022) ("[A] single class action representing class members across the state asserting state claims in the judicial district in which the defendant is located appears sufficiently desirable.").

Finally, because Defendant's liability as to Plaintiff's overtime, meal period, and rest period claims is subject to common proof, class wide adjudication is manageable. *See Blackwell*, 2022 WL 10626473, at *7 (Class wide adjudication manageable when liability "would rely on defendant's policy documents as well as witness testimony to determine whether defendants' practice violated state law.").

Thus, when considering the relevant factors, the Court finds that a class action is the superior method for fairly and efficiently adjudicating the overtime, meal period, and rest period claims of Plaintiff and the proposed class.

In conclusion, the Court has found that Plaintiff has met his burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to Class 1. Therefore, the Court recommends that Class 1 be certified.

**B. Class Two: Section 203 Subclass**

As alleged in Plaintiff's amended complaint, Defendant failed to pay Plaintiff and other class members who terminated employment with Defendant their earned and unpaid wages within the waiting time required by California Labor Code sections 201 and 202. (ECF No. 1-1, p. 29). Accordingly, those class members are entitled to penalties, attorneys' fees, and costs pursuant to Labor Code Section 203. (ECF No. 1-1, p. 29). On that basis, Plaintiff further seeks to certify a subclass made up of "[a]ll members of Class 1 who. . . were either voluntarily or involuntarily separated from their employment with or stopped providing services on behalf of M-I, L.L.C." (ECF No. 78, p. 1).

According to Plaintiff's declaration, because Defendant treated drilling fluid specialists as exempt, "[a]t the time [Plaintiff] stopped working for [Defendant], [Plaintiff] was owed substantial overtime wages and meal and rest period premiums." (ECF No. 38-5, p. 7). Thus, Plaintiff's Section 203 claims are derivative of the Class 1 overtime, meal period, and rest period

claims. Defendant argues that "[b]ecause Plaintiff cannot show that the question of whether [drilling fluid specialists] were misclassified is capable of classwide resolution, he likewise fails to demonstrate that his derivative claim for waiting time penalties can be properly certified." (ECF No. 52, p. 37).

Here, Class 2 has 34 members. (ECF No. 78, p. 2). That number is sufficiently numerous so that joinder is impracticable. Therefore, the numerosity requirement is met as to the Section 203 subclass. As discussed extensively above, the Court has found that the exemption issue raised by Plaintiff's overtime, meal period, and rest period claims is sufficiently common as to the proposed class. Because the Section 203 claims allow Plaintiff to assert the same arguments regarding exemption, the Court finds that the commonality factor is met as to the Section 203 subclass. For the reasons addressed above, the Court also finds that Plaintiff's Section 203 claims satisfy the typicality and adequacy requirements. Further, because the Court has found Plaintiff's overtime, meal period, and rest period claims satisfy the predominance and superiority requirements of Rule 23(b)(3), the Court also finds Plaintiff's derivative Section 203 claims meet the requirements of Rule 23(b)(3).

Thus, the Court recommends that Plaintiff's Section 203 subclass be certified.

### C. Class Three: Wage Statement Subclass

Plaintiff's amended complaint alleges that because Defendant misclassified its drilling fluid specialists as either exempt or independent contractors, Defendant also failed to maintain and provide Plaintiff and other class members with accurate wage statements in violation of Labor Code Section 226, Section 1174, and the applicable wage order. (ECF No. 1-1, p. 24-28). Plaintiff seeks to certify a subclass of drilling fluid specialists who "were either not provided with a wage statement by M-I, L.L.C. or who were provided with a wage statement that did not accurately reflect all of the information required by Labor Code Section 226(a)." (ECF No. 78, p. 1-2).

The Court finds that Plaintiff has not demonstrated that the putative wage statement subclass satisfies the requirements of Rule 23(a). First, the class is not sufficiently numerous. According to Plaintiff, Class 3 is comprised of 12 members. (ECF No. 78, p. 2). This figure is not so numerous that joinder is impracticable. *See Gen. Tel. Co. of the Nw. v. Equal Employment*

*Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (noting that a class with only 15 members "would be too small to meet the numerosity requirement").

Second, as defined by Plaintiff, the wage statement subclass does not share common issues because it includes members who were provided an inaccurate wage statement and those who were not provided any wage statement at all. Plaintiff argues that this subclass is derivative from the main class because Defendant's liability for providing inaccurate wage statements is based on the same misclassification issue. However, it is not clear to the Court that the provision of inaccurate wage statements poses the same legal question of liability for Defendant as to class members who did not receive wage statements.

Further, Defendant argues that Defendant is not liable for failing to provide a wage statement if the contract employee was issued a compliant wage statement by the staffing agency. Plaintiff's declaration indicates that he received wage statements from SGF. (*See* ECF No. 38-5, p. 7). Thus, the fact that Plaintiff was employed through the staffing company, who arguably, is liable for his wage statements, is not typical to others in the class who received wage statements from Defendant or who received wage statements from other joint employers.

For those reasons, the Court recommends that class certification be denied as to Class 3.

## VI.    CONCLUSION AND RECOMMENDATIONS

Based on the forgoing, IT IS RECOMMENDED that:

1. Plaintiff's motion for class certified (ECF No. 38) be granted, in part, and that the Court certify the following class pursuant to Rule 23(b)(3):

   a. All persons who at any time from May 20, 2016 to the date of certification worked as employees of M-I, L.L.C. or provided services on behalf of M-I, L.L.C. in California in job positions titled "Drilling Fluid Specialist" (mud man, Levels I-IV and mud man Senior), mud engineer," "mud man," "mud man Trainee," "mud man consultant" and/or equivalent job titles who have not released all claims asserted in this action and who are not subject to an arbitration agreement applicable to the services such person provided on behalf of M-I, L.LC in California during the class period.

   b. All members of Class 1 who at any time during the period beginning on

May 20, 2017, and ending on the date of certification were either voluntarily or involuntarily separated from their employment with or stopped providing services on behalf of M-I, L.L.C.

2. Defendant's motion to strike (ECF No. 57) be denied;

3. Defendant's objections (ECF No. 53) be overruled.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **TWENTY-ONE (21) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **TWENTY-ONE (21) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 27, 2022**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

24