1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONOVIN LAST, *individually and on*          No.  1:20-cv-01205-NODJ-EPG
     *behalf of all others similarly situated*,
12
                    Plaintiff,
13                                                ORDER GRANTING DEFENDANT'S
          v.                                      MOTION TO COMPEL ARBITRATION AND
14                                                DENYING AS MOOT PLAINTIFF'S
     M-I, L.L.C.,                                 MOTION FOR CLASS CERTIFICATION
15                                                AND DEFENDANT'S MOTION TO STRIKE
                    Defendant.
16                                                (Doc. Nos. 38, 55, 57, 85, 88)

17

18

19          This matter is before the court on plaintiff Donovin Last's motion for class certification

20   (Doc. No. 38) and motions to compel arbitration (Doc. No. 55) and to strike certain deposition

21   errata sheets (Doc. No. 57) brought on behalf of defendant.  Plaintiff's motion for class

22   certification and defendant's motion to strike were taken under submission by the assigned

23   magistrate judge on February 4, 2022, and May 24, 2022, respectively.  (Doc. Nos. 47, 58.)  In

24   light of the ongoing public health emergency posed by the coronavirus (COVID-19) pandemic,

25   defendant's motion to compel arbitration was taken under submission on the papers by the

26   undersigned on May 23, 2022.  (Doc. No. 56.)  In the meantime, on December 27, 2022, findings

27   and recommendation were issued recommending that plaintiff's motion for class certification be

28   granted in part and that defendant's motion to strike be denied.  (Doc. No. 85.)  Objections to

1

1 those findings and recommendations and a response to the objections were then filed.  (Doc. Nos.

2 86, 87.)

3         For the reasons explained below, the court will grant defendant's motion to compel

4 arbitration.  In light of that order, the court will also deny plaintiff's motion for class certification

5 and defendant's motion to strike as having been rendered moot by this order.[1]

6                                            **BACKGROUND**

7         **A.     Factual Background**

8         Plaintiff is a drilling fluids specialist[2] who was supplied to defendant by a staffing

9 company named SGF.[3]  (Doc. No. 38-5 at ¶¶ 2, 3.)  Defendant assigned plaintiff to work on oil

10 and drilling rigs owned and operated by defendant's client, California Resources Corporation

11 ("CRC") in California between May 2019 and March 2020.  (*See* Doc. Nos. 23 at 3; 63 at 2–3.)

12 This lawsuit involves alleged violations of the California Labor Code while plaintiff was

13 employed in California.  (Doc. No. 1-1 at 19–20.)

14         Before coming to California, while working in Oklahoma, plaintiff executed an

15 employment agreement with SGF on June 22, 2017 which, by its express terms, "end[ed on]

16 December 04, 2017."  (Doc. No. 55-1 at 13, 15.)  This agreement specified that plaintiff would

17 work in Oklahoma for the client Schlumberger Technology Corporation ("STC")—a company

18 specializing in oilfield services and products—and provide technical services and support in

---

19
20 [1]  The Clerk of the Court will be directed to also terminate those findings and recommendation to
reflect that they are no longer pending.

21
22 [2]  Drilling fluids specialists, also referred to in the industry as mud engineers or mud men, work
on oil and gas drilling rigs.  (*See* Doc. 38-1 at 7.)  Specifically, their work involves taking fluid
samples from wells at drilling sites and performing tests to determine if the samples fall within
23 the specifications set by the drilling fluid program for that well.  (*Id.* at 8.)  Drilling fluid
programs designate the appropriate mixture of chemicals, water, and other substances used to
24 lubricate drilling bits so that they may efficiently penetrate the earth to drill oil and gas wells.
(*Id.*)  In addition to taking samples, drilling fluid specialists also assist the drilling crew in adding
25 "mud" i.e., the lubricating fluids, to the well.  (*Id.*)

26
27 [3]  In various filings, the parties have used different names in referring to non-party SGF,
including "SGF Consulting," "SGF, Inc.," and "SGF US, LLC."  (*See* Doc. Nos. 1 at 6; 38-1 at 7;
55 at 6.)  These various names all refer to the same particular entity:  the staffing company which
28 provided plaintiff to defendant.  (*Id.*)

1    connection with STC's projects.  (*Id.* at 14.)  Leading up to his move to California, plaintiff was

2    stationed in Oklahoma on several drilling sites owned by various STC customers.  (Doc. No. 63 at

3    2, 3.)  Defendant asserts, and plaintiff does not dispute, that the reference in the employment

4    agreement to "Schlumberger" also encompasses defendant, in part because STC owns defendant.

5    (*See* Doc. Nos. 1 at ¶ 8; 55 at 6 n.1.)

6        Plaintiff's employment agreement with the staffing company SGF contains an arbitration

7    clause which states in relevant part that "[a]ny dispute with this Agreement or law arising in

8    connection with the Agreement and/or the work performed thereunder shall be exclusively settled

9    by arbitration of a single arbitrator appointed in accordance with the mediation rules of the

10   National Arbitration Forum."  (Doc. No. 55-1 at 15.)  The arbitration clause is located at section 6

11   of the agreement.  (*Id.*)  Plaintiff's employment agreement also contains a survival clause which

12   provides in relevant part that "[t]he provisions of Section 6 . . . of this Agreement shall survive

13   the expiration of the Term or termination of this Agreement."  (*Id.* at 17.)  With respect to

14   governing law, the agreement states "[t]his Agreement shall be governed and construed in

15   accordance with the laws of the State of Florida, United States of America."  (*Id.* at 15.)

16       Plaintiff's operative first amended complaint concerns work performed in California and

17   alleges the following.  Defendant misclassified plaintiff and other class members as exempt

18   employees or independent contractors rather than non-exempt employees.  (Doc. No. 1-1 at 20.)

19   Based on this misclassification, defendant did not properly compensate plaintiff and other class

20   members for the hours they worked at the legally required rates, failed to provide meal and rest

21   periods, failed to maintain and furnish accurate and complete wage statements, and failed to pay

22   waiting time wages upon termination.[4]  (*Id.* at 23–29.)  In addition, plaintiff brings a claim for

23

24   [4]  Specifically, plaintiff asserts claims based on the following violations:  (1) failure to pay
     compensation due in violation of California Labor Code § 1197 and applicable Wage Orders; (2)
25   failure to provide compliant meal periods in violation of California Labor Code § 226.7 and
     applicable Wage Orders; (3) failure to provide compliant rest breaks in violation of California
26   Labor Code § 226.7 and applicable Wage Orders; (4) failure to furnish itemized wage statements
     in violation of the California Labor Code § 226 and failure to keep records in violation of
27   California Labor Code § 1174; (5) failure to pay wages timely upon termination in violation of
     California Labor Code § 201, *et seq*. and for penalties under California Labor Code § 203.  (Doc.
28   No. 1-1 at 23–29.)

1   restitution and declaratory relief pursuant to California Business & Professions Code § 17200, *et*

2   *seq.*, and a claim for civil penalties under the California Private Attorney General Act ("PAGA").

3   (*Id.* at 30–31.)

4          In this putative class action, plaintiff seeks to represent three classes, and plaintiff's

5   amended class definitions[5] are as follows:

6               **Class 1.**  All persons who at any time from May 20, 2016 to the date
7               of certification worked as employees of M-I, L.L.C. or provided
            services on behalf of M-I, L.L.C. in California in job positions titled
8               "Drilling Fluid Specialist" (mud man, Levels I-IV and mud man
            Senior), mud engineer," "mud man," "mud man Trainee," "mud man
9               consultant" and/or equivalent job titles who have not released all
            claims asserted in this action and who are not subject to an arbitration
10              agreement applicable to the services such person provided on behalf
            of M-I, L.LC in California during the class period.

11              **Class 2.  Section 203 Subclass.**  All members of Class 1 who at any
            time during the period beginning on May 20, 2017 and ending on the
12              date of certification were either voluntarily or involuntarily separated
            from their employment with or stopped providing services on behalf
13              of M-I, L.L.C.

14              **Class 3.  Wage Statement Subclass**.  All members of Class 1 who
            at any time during the period beginning on May 20, 2019 and ending
15              on the date of certification were either not provided with a wage
            statement by M-I, L.L.C. or who were provided with a wage
16              statement that did not accurately reflect all of the information
            required by Labor Code Section 226(a).
17

18  (Doc. No. 78.)  Plaintiff seeks to represent at least 47 members in Class 1, at least 34 members in

19  Class 2, and at least 12 members in Class 3.  (*Id.*)

20        **B.**  **Procedural Background**

21         On May 20, 2020, plaintiff initiated this action by filing a putative class action complaint

22  against defendant and unnamed Doe defendants 1–10 in the Kern County Superior Court.  (Doc.

23  No. 1-1 at 3.)  That complaint was not served on defendant.  (*Id.* at 2.)  Plaintiff then filed a first

24  amended class action complaint on July 27, 2020, which was served on defendant on July 29,

25  ───────────
  [5]  After hearing oral argument from the parties on plaintiff's motion for class certification and
26  defendant's motion to strike, the assigned magistrate judge ordered plaintiff to file an amended
statement of proposed class definitions and revise class membership numbers in light of
27  defendant's argument that some of plaintiff's proposed class members had waived their right to
participate in a collective action or were subject to an arbitration agreement.  (*See* Doc. No. 85 at
28  7 n.1.)

1   2020.  (*Id.* at 17, 19.)  After filing an answer to plaintiff's first amended complaint on August 24,

2   2020, defendant timely filed a notice of removal in this court on August 26, 2020.  (Doc. Nos. 1;

3   1-1 at 44.)

4       On October 30, 2020, a scheduling order was issued setting the deadline for initial

5   disclosures for November 22, 2020, requiring that all non-expert discovery relating to class

6   certification was to be completed no later than April 5, 2022, and setting a mid-discovery status

7   conference for May 10, 2021.  (Doc. No. 9.)  On February 22, 2021, the parties filed a stipulated

8   motion for a protective order and confidentiality agreement which was granted by the then-

9   assigned magistrate judge the same day.  (Doc. Nos. 10, 11.)  A few days later, on February 26,

10  2021, defendant concurrently filed (1) an unopposed motion for leave to file a first amended

11  answer, and (2) its first amended answer.  (Doc. Nos. 12, 14, 22.)  That unopposed motion was

12  granted on June 3, 2021.  (Doc. No. 21.)

13      On May 14, 2021, following the mid-discovery status conference, an order was issued

14  addressing the parties' discovery dispute as to whether defendant's rule 30(b)(6) witness could be

15  deposed more than once given that plaintiff had filed three other actions against related parties

16  arising from his period of work with defendant.[6]  (Doc. No. 20.)  On September 10, 2021, an

17  informal teleconference was held (Doc. No. 31) regarding additional discovery disputes between

18  the parties, but "little was resolved."  (Doc. No. 32.)

19      On January 7, 2022, in response to plaintiff's notice to file documents designated as

20  confidential (Doc. No. 33), defendant filed an unopposed request to seal documents, which was

21  granted on January 11, 2022.  (Doc. Nos. 35, 36, 37.)  Plaintiff then filed the pending motion for

22  class certification on January 11, 2022.  (Doc. No 38.)  After three stipulated extensions of

23

---

24  [6]  In the first action, *Carney v. GEO Drilling Fluids, Inc.*, No. BCV-15-101729 (Kern Co. Sup.
25  Ct. filed Dec. 21, 2015), plaintiff sued CRC, the owner of the drilling rigs which he worked on
    while stationed in California.  (*See* Doc. No. 23 at 3.)  In the now consolidated second and third
26  actions, *Last v. SGF US Inc.*, Nos. BCV-20-101214; BCV-21-100136 (Kern Co. Sup. Ct. filed
    May 21, 2020; Jan. 20, 2021), plaintiff sued SGF US Inc., the staffing company which provided
27  him to defendant.  (*Id.*)  The order which resolved this dispute specified that "[t]he defendant
    SHALL NOT have to produce this deponent more than once despite that the plaintiff is involved
28  in three cases in which the defendant is either a named party or a witness."  (Doc. No. 20.)

1   class certification briefing and hearing dates were adopted by the court,[7] defendant concurrently

2   filed its opposition to plaintiff's motion for class certification and objections to the same on May

3   20, 2022.  (Doc. Nos. 52, 53.)

4          Also on May 20, 2022, defendant filed a second request to seal documents and the

5   pending motion to compel arbitration.  (Doc. Nos. 54, 55.)  Plaintiff filed his opposition to

6   defendant's motion to compel arbitration on June 3, 2022, and defendant filed its reply thereto on

7   June 13, 2022.  (Doc. Nos. 63, 65.)  On July 18, 2022, defendant filed a notice of supplemental

8   authority requesting that plaintiff's representative PAGA claims be dismissed in their entirety,

9   and that his individual PAGA claims be sent to arbitration pursuant to the Supreme Court's then-

10   recent decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), which abrogated

11   the previously applicable California Supreme Court decision in *Iskanian v. CLS Transportation*

12   *Los Angeles, LLC*, 59 Cal. 4th 348 (2014), under which plaintiff's PAGA claims were not subject

13   to arbitration.  (Doc. No. 73.)  Plaintiff's opposition to defendant's request was filed the same

14   day.  (Doc. No. 74.)

15                              **LEGAL STANDARD[8]**

16          The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C. § 2.

17   "Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save

18   upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Viking River*

19   *Cruises*, 596 U.S. at 649–50 (quoting 9 U.S.C. § 2).  "As we have interpreted it, this provision

20   contains two clauses:  An enforcement mandate, which renders agreements to arbitrate

21   enforceable as a matter of federal law, and a saving clause, which permits invalidation of

22   /////

23   ───────────────────────

24   [7]  The parties' first and second requests to extend time were granted, while the third request was
     granted in part, with a two-week extension of time being granted rather than the requested four
     weeks.  (Doc. Nos. 46–51.)  In the end, defendant's deadline to file an opposition to plaintiff's
25   motion for class certification was extended from March 8, 2022 to May 20, 2022.  (*Id.*)

26
27   [8]  Because the court will grant defendant's motion to compel arbitration for the reasons explained
     below, the court need not address the legal standards applicable to plaintiff's motion for class
     certification and defendant's motion to strike, which will both be denied as having been rendered
28   moot by this order.

1   arbitration clauses on grounds applicable to 'any contract.'"  *Id.* at 650 (citing *AT&T Mobility*

2   *LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)).

3          A party seeking to enforce an arbitration agreement may petition the court for "an order

4   directing the parties to proceed to arbitration in accordance with the terms of the agreement."

5   9 U.S.C. § 4.  To rule on a motion to compel arbitration, a court must determine: (1) whether a

6   valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

7   dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).

8   "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."

9   *Concepcion*, 563 U.S. at 351.  However, parties may rely upon general contract defenses to

10  invalidate an agreement to arbitrate.  *See id.* at 339.  Thus, a court should grant a motion to

11  compel arbitration of a dispute only where it is satisfied that neither the agreement's formation

12  nor enforceability or applicability to the dispute is in issue.  *See Granite Rock Co. v. Int'l Bhd. of*

13  *Teamsters*, 561 U.S. 287, 299–300 (2010).  "Where a party contests either or both matters, 'the

14  court' must resolve the disagreement[,]" *id.*, "because a party cannot be required to submit to

15  arbitration any dispute which he has not agreed so to submit."  *Knutson v. Sirius XM Radio Inc.*,

16  771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav.*

17  *Co.*, 363 U.S. 574, 582 (1960)).  If a valid arbitration agreement encompassing the dispute exists,

18  arbitration is mandatory.  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

19         Because arbitration is a creation of contract, a court may compel arbitration only when

20  there is a "clear agreement" to arbitrate between the parties.  *Davis v. Nordstrom, Inc.*, 755 F.3d

21  1089, 1092–93 (9th Cir. 2014) (citations omitted).  "In determining whether the parties have

22  agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract

23  formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing

24  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under section 3 of the FAA, a

25  court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an

26  agreement, shall on application of one of the parties stay the trial of the action until such

27  arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

28  /////

1

**ANALYSIS**

2        In opposing the pending motion to compel arbitration, plaintiff does not challenge the

3   validity of his employment agreement with SGF.  Instead, he argues that the agreement

4   terminated prior to the events giving rise to this action and therefore does not apply because it

5   fails to encompass his claims.  (Doc. No. 63 at 1–4.)  Plaintiff also asserts he cannot be compelled

6   to arbitrate his claims brought in this action because he never agreed to arbitrate any claims

7   relating to his work for defendant in California.  (*Id.* at 4.)  Finally, plaintiff argues that defendant

8   has waived any right it may have to compel arbitration.  (*Id.* at 4–7.)

9        In its motion and reply, defendant rebuts plaintiff's waiver argument, asserting that it can

10  enforce the arbitration clause as a non-signatory under the doctrine of equitable estoppel, and

11  maintaining that plaintiff's claims fall within the scope of the employment agreement's

12  arbitration clause.  (Doc. Nos. 55 at 9–13; 65 at 4–6.)  Below, the court will address whether

13  defendant has waived its right to compel arbitration, whether the arbitration clause can be

14  enforced, and the applicability of the arbitration clause to the dispute at hand.

15      **A.**    **Waiver**

16        Plaintiff argues that defendant has waived its right to compel arbitration because it "chose

17  to delay any purported right to compel arbitration by actively litigating this case to take advantage

18  of being in federal court."  (Doc. No. 63 at 5.)  Specifically, plaintiff points to the fact that

19  defendant deposed plaintiff twice and also deposed three individuals who provided declarations in

20  support of plaintiff's motion for class certification.  (*Id.*)  In response, defendant explains that it

21  "first learned of Plaintiff's arbitration agreement with SGF in October 2021 after SGF produced

22  documents in response to [defendant] M-I's subpoena."  (Doc. No. 65 at 4.)  Defendant contends

23  it has not waived its right to compel arbitration because, although it could have filed the motion to

24  compel arbitration earlier than it did, it was reasonable to depose plaintiff beforehand given the

25  parties' dispute as to whether the arbitration agreement was still in effect.  (*Id.* at 5.)  For the

26  reasons explained below, the court finds that defendant has not waived its right to compel

27  arbitration.

28  */////*

1    In light of the Supreme Court decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022),

2  the Ninth Circuit has clarified that when assessing waiver in the arbitration context, the party

3  opposing arbitration and asserting waiver must show the other party's "(1) knowledge of an

4  existing right to compel arbitration and (2) intentional acts inconsistent with that existing right."

5  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).

6    Here, the first showing as to waiver is satisfied because defendant admittedly discovered

7  plaintiff's arbitration agreement with SGF in October 2021.  (Doc. No. 65 at 4.)  Defendant does

8  not dispute that it had knowledge of an existing right to arbitrate based on learning of that

9  agreement.

10    Concerning the second aspect of the required showing, "[t]here is no concrete test to

11  determine whether a party has engaged in acts that are inconsistent with its right to arbitrate."

12  *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016).  Instead, the totality of the parties' actions

13  are to be considered.  *Hill*, 59 F.4th at 471.

14  
15  
16  
17  
18  
19  
20  
21  
22

> We find this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court.  *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 [F.2d] 754, 756, 759 (9th Cir. 1988) (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x. 663, 664 (9th Cir. 2014) (finding this element satisfied when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss").  A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver.  *See In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."); *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.").

23  *Id.* (quoting *Martin*, 829 F.3d at 1125).  When "substantial litigation" has occurred, a party is

24  deemed not to have waived its right to compel arbitration if there have been "unique

25  circumstances that have explained the long delay in filing a motion to compel, such as absence of

26  knowledge, a party's *pro se* status, or intervening law."  *Martin*, 829 F.3d at 1127 n.5.

27    The Ninth Circuit's decision in *Hill* is instructive and illustrates when a party should be

28  found to have acted inconsistently with their existing right to compel arbitration.  There, the

9

1  defendant seeking to compel arbitration against class members who had signed a particular

2  dispute resolution plan "pursued [its] challenge in three different courtrooms (the district court,

3  [the Ninth Circuit], and the Washington Supreme Court), all without even attempting to reserve

4  its arbitration right under the [dispute resolution plan.]"  *Hill*, 59 F.4th at 473.  In addition,

5  extensive discovery was requested from unnamed parties to assist the court in resolving the

6  underlying merits of the parties' dispute.  *Id.* at 474–76.  Most notably, the defendant filed a

7  motion for partial summary judgement as to a key issue in the case, leading the district court to

8  certify an interlocutory appeal which was then litigated for nearly five years.  *Id.* at 476.  In sum,

9  affirming the district court's finding that the defendant had waived its right to compel arbitration,

10  the Ninth Circuit determined that the actions outlined above presented "a clear narrative of [the

11  defendant's] strategic choice to engage the judiciary for resolution of the class claims rather than

12  to obtain a resolution from an arbitrator."  *Id.* at 477.

13        In this case, with respect to the second showing required for waiver, the court does not

14  find a sufficient basis upon which to conclude that defendant acted inconsistently with its right to

15  compel arbitration.  Although it is true that defendant has engaged in significant litigation conduct

16  since the initiation of this action, it did so without knowledge that plaintiff's employment

17  agreement with SGF contained an arbitration clause.  (*See* Doc. No. 65 at 4.)  Defendant's

18  conduct in the seven months between first learning of the existence of the arbitration clause in

19  October 2021 and its moving to compel arbitration on May 20, 2022 is considerably less

20  indicative of a "strategic choice to engage the judiciary for resolution" of the matter than the

21  defendant's choices reflected in the procedural history in *Hill*.  *See Hill*, 59 F.4th at 477.  Here,

22  during the relevant seven–month period, defendant filed two requests to seal documents, jointly

23  sought and received three extensions of time for class certification briefing and hearing dates,

24  filed an opposition and objections to plaintiff's motion for class certification, and took five

25  depositions.  (Doc. Nos. 35, 46, 48, 50, 52, 53, 54, 63.)  For the reasons explained below, the

26  court concludes that the taking of these actions is not inconsistent with defendant's pending

27  assertion of the right to compel arbitration.

28  /////

First, defendant's requests to seal documents were mandatory, as opposed to strategic filings.  Pursuant to Local Rule 141 and the court's standing order in civil cases, defendant was required to make specific requests to seal "even if an existing protective order, statute, or rule requires or permits the sealing of the document."  L.R. 141.

Second, this court declines to construe defendant's requests for extensions of time for class certification briefing as "active litigation," because these extensions were stipulated to by both parties and were sought due to matters outside of their control including health concerns relating to the ongoing effects of the COVID-19 pandemic.  (*See* Doc. No. 46 at 3.)

Third, defendant's opposition and objections to plaintiff's motion for class certification are not indicative of waiver because those filings did not seek judicial resolution on the merits of plaintiff's claims.  *See Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941–42 (9th Cir. 2019) (distinguishing between seeking resolution "on the merits of a key issue in a case" and other litigation activities, such as motions not addressing the merits, that do not evince a decision to take advantage of the judicial forum), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).  In this regard, the court has not identified—and the parties have not cited—any case in which the filing of an opposition or objections directed at non-merits issues has been found to conduct inconsistent with the right to compel arbitration.

Further, it appears the Ninth Circuit has found waiver of the right to arbitrate only where a party has *initiated* seeking judicial resolution of the merits, not when a party has merely responded to such a request.  *Hill*, 59 F.4th at 476; *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding that the party who moved the court to dismiss the action had waived its right to compel arbitration); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988) (same).  Here, defendant was not the moving party on the motion for class certification and the court concludes it has not acted inconsistently with its right to compel arbitration by filing an opposition and objections to plaintiff's motion for class certification.  Indeed, if defendant had not filed an opposition, it unnecessarily risked conceding the motion.  *See* L.R. 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.").

*////*

As to the depositions defendant took of plaintiff on February 7, 2022 and February 22, 2022, the court agrees with defendant that is was reasonable to depose plaintiff prior to moving to compel arbitration under the circumstances of this case.  (*See* Doc. No. 65 at 5.)  This is particularly so, not only because the parties dispute whether plaintiff's employment agreement with SGF was still in effect, but also because defendant was not a signatory to that agreement.  (*See* Doc. Nos. 63 at 1–4; 65 at 2–4.)  Thus, by "question[ing] Plaintiff about the June-December 2017 Agreement" defendant conducted a reasonable inquiry under the circumstances which presumably shed light on its ability to move to compel arbitration in the first instance, and to also determine the viability of doing so as a non-signatory under a theory of equitable estoppel.  (Doc. Nos. 55 at 9; 63 at 5.)

The court also notes that defendant began requesting dates for plaintiff's deposition in June 2021, "and was only able to take the deposition after noticing it five separate times."  (Doc. No. 65 at 5.)  Given these circumstances, the court does not find that the seven–month interval between when defendant learned of the arbitration clause and filed the motion to compel arbitration to be "extended silence delay" indicating a course of action inconsistent with the right to arbitrate.  *Martin*, 829 F.3d at 1125.

As to the remaining three depositions which took place on March 15, April 9, and April 22, of 2022, defendant notes that they needed to be taken "regardless of the Agreement and arbitration clause."  (Doc. No. 65 at 5–6.)  Presumably, taking the depositions of the three individuals who provided declarations in support of plaintiff's motion for class certification was necessary in order to prepare a responsive opposition brief.  Accordingly, the court will not interpret defendant's preparation in responding to plaintiff's motion for class certification as conduct inconsistent with the right to arbitrate.  *See Newirth ex rel.*, 931 F.3d at 941 (noting that generally, courts ask whether a party's actions "indicate a conscious decision . . . to seek judicial judgment *on the merits* of [the] arbitrable claims[.]") (quoting *Martin*, 829 F.3d at 1125) (emphasis added).

For all of these reasons, the court concludes that defendant has not engaged in intentional acts inconsistent with its right to compel arbitration, and accordingly has not waived

1    that right.  The court will next turn to whether defendant can enforce the arbitration clause

2    contained in the employment agreement, and if so, whether that agreement encompasses this

3    dispute.

4         **B.      Enforceability of the Arbitration Clause**

5         The parties frame the issue of enforceability under California law.[9]  (*See* Doc. Nos. 55 at

6    9; 63 at 4; 65 at 2–4.)  Defendant argues that it can enforce the arbitration clause as a non-

7    signatory to the employment agreement under the doctrine of equitable estoppel, while plaintiff

8

9    _____

     [9]  As noted above, however, plaintiff's employment agreement with SGF provides that "[t]his

10   Agreement shall be governed and construed in accordance with the laws of the State of Florida,
     United States of America."  (Doc. No. 55-1 at 15.)  Accordingly, a choice of law determination is

11   required.  "Federal courts sitting in diversity look to the law of the forum state . . . when making
     choice of law determinations."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir.

12   2014).  California strongly favors arbitration and has no public policy against the enforcement of
     choice of law provisions.  *See Evans v. PayPal, Inc.*, No. 22-15979, 2023 WL 6058490, at *1 (9th

13   Cir. Sept. 18, 2023) (citing *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55
     Cal. 4th 223, 235 n.4 (2012); *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906,

14   (2001)).  Thus, "[u]nder California law, the parties' choice of law will govern unless section
     187(2) of the Restatement (Second) of Conflict of Laws dictates a different result."  *Nguyen* 763

15   F.3d at 1175.  Section 187(2) of the Restatement provides in relevant part that the law of the
     parties' chosen state will apply unless either "(a) the chosen state has no substantial relationship

16   to the parties or the transaction . . . or (b) application of the law of the chosen state would be
     contrary to a fundamental policy of a state which has a materially greater interest than the chosen

17   state . . . ."  Restatement (Second) of Conflict of Laws § 187 (1971).  Here, there is a substantial
     relationship between the state of Florida and the staffing company SGF because SGF is a Florida-

18   based business.  (Doc. No. 55 at 8); *see also* Restatement (Second) of Conflict of Laws § 187,
     comment f (noting that a substantial relationship exists where one of the parties is domiciled or

19   has its principal place of business in the chosen state).  Additionally, as noted, California has no
     public policy against the enforcement of choice of law provisions.  *Evans*, No. 22-15979, 2023

20   WL 6058490, at *1.  Therefore, the parties' selection of Florida law applies, because the factors
     identified in §187 do not dictate a different result.  However, because plaintiff's employment

21   agreement does not indicate that Florida law is to apply "without regard to [Florida's] choice of
     law principles," *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1155 (9th Cir. 2013),

22   Florida's choice of law principles are relevant in determining the correct state substantive law to
     apply.  Florida applies the *lex loci contractus* rule for choice of law determinations regarding

23   issues of contract law.  *In re Gen. Capacitor*, No. 16-cv-02458-HSG, 2018 WL 11169376, at *2
     (N.D. Cal. Sept. 14, 2018) (citing *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160,

24   1163 (Fla. 2006)).  Under this rule, the law of the state in which the contract was executed
     governs.  *Id.*  In this case, it appears that plaintiff's employment agreement was executed in

25   Oklahoma.  (*See* Doc. No. 55-1 at 13.)  Nonetheless, neither party has asked the court to apply
     Oklahoma law and the court observes that it appears California law and Oklahoma law are

26   indistinguishable from one another as to the relevant issues.

27

28

1    maintains that his employment agreement terminated on December 4, 2017 and that he "never

2    agreed to arbitrate any claims he had against [defendant] M-I or SGF arising out of or relating to

3    his work in California for [defendant] M-I." (Doc. Nos. 55 at 9; 63 at 3.)  In its reply, defendant

4    argues that the agreement renewed when plaintiff continued working for SGF after the expiration

5    date identified in the employment agreement.  (Doc. No. 65 at 2.)  Thus, the issues to resolve are

6    (1) whether the agreement is nonetheless enforceable after its express end date, and (2) whether

7    defendant can enforce the agreement as a non-signatory pursuant to the equitable estoppel

8    doctrine.

9                            1.      Renewal and Survival

10        Under California law, "[a] written agreement to submit to arbitration an existing

11   controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon

12   such grounds as exist for the revocation of any contract."  Cal. Civ. Proc. Code § 1281.  The term

13   "written agreement" "includes a written agreement that has been extended or renewed by an oral

14   or implied agreement."  Cal. Civ. Proc. Code § 1280.  "An implied contract is one, the existence

15   and terms of which are manifested by conduct."  Cal. Civ. Code § 1621.[10]  "A commonly cited

16   example is where parties continue to perform under the terms of their agreement after the written

17   contract expires."  *Telecom Asset Mgmt., LLC v. Fiberlight, LLC*, 203 F. Supp. 3d 1013, 1020

18   (N.D. Cal. 2016), *aff'd*, 730 F. App'x 443 (9th Cir. 2018) (citing *U.S. ex rel. Oliver v. Parsons*

19   *Co.*, 195 F.3d 457, 462 (9th Cir. 1999)).

20        Here, plaintiff and SGF's conduct after the December 4, 2017 expiration date of their

21   agreement indicates that a renewal of the contractual relationship occurred.  Plaintiff was

22   continuously employed by SGF performing work as a drilling fluids specialist from June 2017 to

23   March 2020.  (*See* Doc. No. 65 at 3.)  In turn, SGF paid plaintiff during that entire time period.

24   _____

25   [10]  In Oklahoma, the relevant legal standard for implied contracts is the same as in California.
     Under Oklahoma law, "[a]n implied contract is one, the existence and terms of which are

26   manifested by conduct."  Okla. Stat. Ann. tit. 15, § 133.  "A court may consider the terms of any
     prior written contract between the parties to ascertain the terms and conditions of a subsequent

27   contract implied by conduct."  *Art of Manliness, LLC v. UrbanDaddy, Inc.*, 478 F. Supp. 3d 1191,
     1204 (N.D. Okla. 2020) (citing *Dixon v. Bhuiyan*, 10 P.3d 888, 892 (Okla. 2000)).  Accordingly,

28   the outcome on this point would not change if Oklahoma law were to be applied.

1    (*Id.*)  Plaintiff notes that his work in California was under different supervision, in a different

2    location, and for a different customer than his work performed in Oklahoma.  (Doc. No. 63 at 2–

3    3.)  However, plaintiff's continued performance and acceptance of payment from SGF supports

4    the conclusion that the employment agreement was renewed by implication.  *Telecom Asset*

5    *Mgmt., LLC*, 203 F. Supp. 3d at 1020; *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance

6    of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far

7    as the facts are known, or ought to be known, to the person accepting.").

8         A finding of renewal is further supported here by the fact that SGF issued plaintiff a

9    certificate of employment in March of 2018 which specified that plaintiff "has been employed by

10    SGF . . . from June 05th, 2017 until now, on a full time position . . . ."  (Doc. No. 65 at 3 n.1.)

11    Additionally, while still working in Oklahoma, plaintiff was issued an amendment form to his

12    employment agreement reflecting an increase in his daily rate of pay to be effective as of

13    February 1, 2018.  (*Id.* at 3.)  These facts demonstrate conduct consistent with an ongoing

14    contractual relationship between plaintiff and SGF extending beyond the expiration date

15    appearing in their agreement.  Plaintiff does not indicate he sought to establish a new contract

16    after December 4, 2017, instead, he continued to perform services and accept payment from SGF

17    in the same manner as he had prior to when his employment agreement expired.  (Doc. No. 63-2

18    at ¶¶ 7, 9.)  Thus, as manifested by their conduct, plaintiff and SGF created an implied

19    employment agreement which renewed the original agreement, including the arbitration clause

20    contained therein.

21         As an alternative basis for enforcement, the court notes that plaintiff's employment

22    agreement contains an applicable survival clause.  That clause states "[t]he provisions of Section

23    6 . . . of this Agreement shall survive the expiration of the Term or termination of this

24    Agreement."  (Doc. No. 55-1 at 17.)  The arbitration clause here is contained within Section 6.

25    *Id.*  Thus, the arbitration clause survives expiration of the agreement, and the question becomes

26    whether post-expiration arbitration of plaintiff's present claims is appropriate under an arbitration

27    clause which originally took effect in 2017 while plaintiff worked in Oklahoma.

28    /////

1    In the context of collective bargaining, the Supreme Court has recognized a "presumption

2    in favor of postexpiration arbitration of matters unless negated expressly or by clear implication

3    [for] matters and disputes arising out of the relation governed by contract." *Shivkov v. Artex Risk*

4    *Sols., Inc.*, 974 F.3d 1051, 1060 (9th Cir. 2020) (internal quotation marks omitted) (citing *Litton*

5    *Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 204 (1991)).

6    For the presumption to apply, the parties' dispute must have "its real
        source in the contract." [*Litton Fin. Printing Div., a Div. of Litton*
7        *Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205 (1991).] This occurs
        "only where [the dispute] involves facts and occurrences that arose
8        before expiration, where an action taken after expiration infringes a
        right that accrued or vested under the agreement, *or* where, under
9        normal principles of contract interpretation, the disputed contractual
        right survives expiration of the remainder of the agreement." *Id.* at
10       206 [] (emphasis added).

11   *Shivkov*, 974 F.3d at 1060–61 (second alteration in original) (quoting *Litton*, 501 U.S. 190).

12   Applying this presumption in the context of the FAA, the Ninth Circuit in *Shivkov* considered the

13   effect of a survival clause on the parties' post-termination arbitration obligations and concluded

14   that those obligations "remain[ed] intact" based on a review of the contract as a whole. *Id.* at

15   1061–63.  Notably, in reaching this conclusion the Ninth Circuit rejected the plaintiff's arguments

16   that under the doctrine of *expressio unius est exclusio alterius*,[11] the arbitration clause was

17   excluded from the survival clause by omission, and that this omission therefore negated

18   application of the presumption, or clearly implied that the parties did not intend for post-

19   expiration arbitration. *Id.*

20   Here, applying "normal principles of contract interpretation," it is much clearer than in

21   *Shivkov* that the obligation to arbitrate survived the termination of plaintiff's employment

22   agreement because the survival clause expressly provides for that conclusion. *Litton*, 501 U.S. at

23   206; *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999),

24   *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("Contract terms are to be

25   given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties

26   _____

27   [11]  The doctrine of *expressio unius est exclusio alterius*, as applied to contract interpretation,
     means that the expression in a contract of one or more things of a class, implies the exclusion of
     all things not expressed. *See Shivkov*, 974 F.3d at 1061 (citing *Herman Chanen Const. Co. v. Guy*

28   *Apple Masonry Contractors Inc.*, 453 P.2d 541, 543 (Ariz. Ct. App.1969)).

16

1    must be ascertained from the contract itself.").[12]   Therefore, the presumption in favor of post-

2    expiration arbitration is applicable in this case.

3         Even without applying the presumption, the plain language of the survival clause makes

4    clear that the parties intended for the post-expiration arbitration of "[a]ny dispute with this

5    Agreement or law arising in connection with the Agreement and/or the work performed

6    thereunder."  (Doc. No. 55-1 at 15.)  Therefore, provided that plaintiff's claims asserted in this

7    action are in fact encompassed by the agreement's arbitration clause, post-expiration arbitration is

8    appropriate.

9         In conclusion, the arbitration clause contained within plaintiff's employment agreement

10   with SGF is enforceable for two reasons.  First, because the parties created an implied agreement

11   by their conduct which renewed their original agreement.  Second, because the survival clause in

12   plaintiff's employment agreement expressly provides for post-expiration arbitration.  The court

13   will next consider whether defendant, as a non-signatory to the agreement, can enforce the

14   arbitration clause under the doctrine of equitable estoppel.

15                    2.   Equitable Estoppel

16        The Supreme Court has held that that nonparties to an agreement may invoke arbitration

17   under the FAA if the relevant state contract law allows them to enforce the agreement.  *See*

18   *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–32 (2009).  "California law permits non-

19   signatories to invoke arbitration agreements under the doctrine of equitable estoppel only in

20   limited circumstances."  *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022) (citing *In*

21   *re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017)).  One such limited circumstance is "when a

22   signatory must rely on the terms of the written agreement in asserting its claims against the

23   nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying

24   ────────────────

25   [12]  Under Oklahoma law, normal principles of contract interpretation are such that "[t]he language
     of a contract is to govern its interpretation, if the language is clear and explicit, and does not

26   involve an absurdity."  Okla. Stat. Ann. tit. 15, § 154.  "[U]nambiguous, clear, and consistent
     contract terms will be enforced as written to carry out the expressed intention of the parties."

27   *Walker v. Builddirect.Com Techs. Inc.*, 349 P.3d 549, 552 (Okla. 2015) (citing *Phillips v. Est. of
     Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993)).  Thus, the outcome here would not change were

28   Oklahoma law applied.

1  contract." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (quoting

2  *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 221 (2009)).[13]

3       In this regard, courts evaluate a signatory's claims "by looking at the relationship between

4  the parties and their connection to the alleged violations."  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998

5  F.3d 867, 875 (9th Cir. 2021) (citing *Metalclad Corp. v. Ventana Env't Organizational P'ship*,

6  109 Cal. App. 4th 1705, 1713 (2003)).  "The fundamental point [of equitable estoppel] is that a

7  party may not make use of a contract containing an arbitration clause and then attempt to avoid

8  the duty to arbitrate by defining the forum in which the dispute will be resolved."  *Boucher v. All.*

9  *Title Co.*, 127 Cal. App. 4th 262, 272 (2005).

10      The Ninth Circuit's decision in *Franklin* is instructive in analyzing whether equitable

11 estoppel applies in this case.  In that case the plaintiff who worked on assignment as a nurse

12 signed an arbitration agreement with her employer, a staffing agency.  *Franklin*, 998 F.3d at 869.

13 The staffing agency assigned the plaintiff to work for a hospital who was not a signatory to the

14 arbitration agreement.  *Id.*  In her action brought against the hospital, the plaintiff alleged that the

15 hospital had failed to provide her proper meal breaks, pay her for off-the-clock work, provide

16 accurate wage statements, or reimburse her for expenses she incurred during her orientation.  *Id.*

17 at 874–75.  Based on these allegations, the plaintiff asserted claims under the Fair Labor

18 Standards Act and the California Labor Code to recover wages.  *Id.* at 875.  The Ninth Circuit

19 reasoned that the plaintiff's claims against the hospital were rooted in her employment

20 relationship with the staffing company.  *Id.*  This was so because the plaintiff's employment

21 contract provided that the staffing company would be responsible for the subject matter upon

22 which the plaintiff's claims against the hospital were predicated.  *Id.* at 875–86.  This included

23 (among other matters) payment, seeking meal period waivers, reviewing time records, payroll

24 duties, and travel reimbursements.  *Id.*  The Ninth Circuit in *Franklin* found that the plaintiff's

25 _____

26 [13] "Oklahoma has approved limited circumstances in which a non-signatory to an agreement may
   compel arbitration, including 'estoppel, when the claims are integrally related to the contract

27 containing the arbitration clause.'"  *High Sierra Energy, L.P. v. Hull*, 259 P.3d 902, 908 (Okla.
   Civ. App. 2011).  Here too, resolution of the pending motion would not change under Oklahoma

28 law.

1    claims brought against the hospital were "intimately founded in and intertwined with" her

2    employment contract with the staffing company and affirmed the district court's grant of the

3    hospital's motion to compel arbitration. *Id.* at 876.

4         Similarly, in this case, plaintiff's claims are rooted in his employment relationship with

5    the staffing company SGF, and therefore equitable estoppel applies and permits defendant to

6    enforce the arbitration clause as a non-signatory.  The thrust of plaintiff's claims here—like those

7    of the plaintiff in *Franklin*—are that he is owed wages as a result of defendant's alleged

8    violations of the California Labor Code.  (Doc. No. 1-1 at 23–31.)  Each cause of action plaintiff

9    brings either expressly references or impliedly relies on defendant's alleged failure to properly

10   pay plaintiff.  *Id.*  But it was the staffing company SGF who was contractually responsible for

11   paying plaintiff, not defendant.  (*See* Doc. No. 55-1 at 13, 14, 19, 27.)  Moreover, plaintiff alleges

12   that defendant acted as a joint employer in committing these violations, but if not for plaintiff's

13   employment relationship with SGF, he would not have been assigned to defendant.  *See Garcia v.*

14   *Pexco, LLC*, 11 Cal. App. 5th 782, 787–88 (2017) (finding that the plaintiff's claims were

15   "intimately founded in and intertwined with" his employment relationship with a staffing agency

16   where the plaintiff alleged that the staffing company and the staffing company's client to which

17   plaintiff was assigned were joint employers).  Plaintiff's claims rest on the benefit he expected to

18   receive from SGF.  Whether plaintiff can maintain liability against defendant, given SGF's role as

19   plaintiff's employer, cannot be answered without reference to plaintiff's employment agreement

20   with SGF.  *See Franklin*, 998 F.3d at 876.  Thus, plaintiff's claims are "intimately founded in and

21   intertwined with" his employment relationship with SGF and defendant can enforce the

22   arbitration clause contained in plaintiff's employment agreement as a non-signatory.  *See Kramer*,

23   705 F.3d at 1128.

24        Having concluded that defendant can enforce the arbitration clause in plaintiff's

25   employment agreement, the court will next determine whether that arbitration clause

26   encompasses the claims brought by plaintiff in this action.

27   /////

28   /////

1

C.      Applicability of the Arbitration Clause to the Present Dispute

2          In its motion to compel arbitration, defendant argues that all of plaintiff's claims are

3     encompassed by the arbitration clause because they relate to his employment with SGF.  (Doc.

4     No. 55 at 12.)  Specifically, defendant points to the fact that plaintiff has brought wage-based

5     causes of action against defendant under a joint employer theory, and that plaintiff's employment

6     agreement with SGF sets out the amount and manner under which SGF was responsible for

7     paying plaintiff.  *Id.*  The court finds defendant's arguments to be persuasive.

8          "In determining if a dispute falls within the scope of an arbitration clause, we examine the

9     factual allegations raised in the complaint."  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101

10    (9th Cir. 2023) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).  "To

11    require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the

12    contract containing the arbitration clause and all doubts are to be resolved in favor of

13    arbitrability."  *Simula, Inc.*, 175 F.3d at 719 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

14    *Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

15         Here, the arbitration clause provides for arbitration of "[a]ny dispute with this Agreement

16    or law arising in connection with the Agreement and/or the work performed thereunder."  (Doc.

17    No. 55-1 at 15.)  This is a broad rather than narrow clause as recognized under California law.

18    *Howard v. Goldbloom*, 30 Cal. App. 5th 659, 663 (2018) (explaining that clauses which provide

19    for arbitration of claims "arising in connection with the agreement" or "arising from or relat[ing]

20    to th[e] agreement" are broad in scope).[14]  A review of each of plaintiff's claims asserted in this

21    action reveals that they clearly "touch matters" covered by the arbitration clause.  Here, plaintiff

22    brings claims to recover wages based on defendant's alleged misclassification of plaintiff and

23    other class members as exempt employees or as independent contractors rather than as non-

24    exempt employees.  (Doc. No. 1-1 at 20.)  In addition to the fact that plaintiff's employment

25    

26    ———————————————
      [14]  *See Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.*, 160 P.3d 936, 948–49, 949

27    n.28 (Okla. 2007) (recognizing that a clause providing for arbitration of claims "arising out of" an
      agreement are broad and "express[] a sweeping arbitration scope").  This language is analogous to

28    the "arising in connection with" language in plaintiff's employment agreement and would
      therefore warrant the same outcome under an application of Oklahoma law.

1   agreement with SGF outlines payment responsibilities, whether plaintiff and other class members

2   were misclassified turns on a dispute of "law arising in connection with the Agreement and/or the

3   work performed thereunder."  (Doc. No. 55-1 at 15.)  As previously explained, plaintiff and SGF

4   renewed their agreement by their conduct.  Therefore, the court concludes that plaintiff's claims

5   asserted in this action are encompassed by the arbitration clause.

6        Accordingly, defendant's motion to compel arbitration (Doc. No. 55) will be granted.

7   Moreover, because the arbitration provision of the employment agreement is enforceable and

8   because all of plaintiff's claims are subject to arbitration, under Ninth Circuit precedent, this court

9   may either stay the action or dismiss it without prejudice.  *Forrest v. Spizzirri*, 62 F.4th 1201,

10  1203 (9th Cir. 2023) ("Although the plain text of the FAA appears to mandate a stay pending

11  arbitration upon application of a party, binding precedent establishes that district courts may

12  dismiss suits when, as here, all claims are subject to arbitration."), *cert. granted*, *Smith v.*

13  *Spizzirri*, No. 22-1218, 2024 WL 133822 (U.S. Jan. 12, 2024); *see also Johnmohammadi v.*

14  *Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).  One California district court when

15  faced with these same circumstances several days ago stated:

16              Recently, however, the Supreme Court granted the petition for
               certiorari in *Forrest* in order to decide whether the FAA allows
17              district courts to dismiss a case when all claims are subject to
               arbitration or whether the suit must be stayed.  Given the possibility
18              of a change in this area of the law, the Court will stay this case until
               July 1, 2024.  In the absence of new authority precluding dismissal,
19              this case will be dismissed on that date.  Should the Supreme Court
               hold that such a dismissal is not permissible, the stay will remain in
20              place until the parties have completed their arbitration of plaintiffs'
               claims.
21

22  *Rossi v. Purvis*, No. 23-cv-04148-PCP, 2024 WL 319679, at *10 (N.D. Cal. Jan. 29, 2024).  This

23  strikes the undersigned as a wise approach under the circumstances and it will be adopted here.

24       Finally, defendant's pending motion to strike (Doc. No. 57) and request for leave to file a

25  reply in support of its objections to the findings and recommendations (Doc. No. 88) will be

26  denied as having been rendered moot by this order.

27  /////

28  /////

21

**CONCLUSION**

For the reasons explained above:

1.    Defendant's motion to compel arbitration (Doc. No. 55) is granted;

2.    The parties shall submit all claims pending in this matter to arbitration in accordance with the arbitration agreement signed on June 22, 2017 (Doc. No. 55-1 at 13, 15);

3.    Plaintiff's motion for class certification (Doc. No. 38) is denied as having been rendered moot by this order;

4.    Defendant's motion to strike (Doc. No. 57) is denied as having been rendered moot by this order;

5.    The findings and recommendations issued on December 27, 2022 (Doc. No. 85) have been rendered moot by this order and the Clerk of the Court is directed to terminate the findings and recommendation as no longer pending;

6.    Defendant's request for leave to file a reply in support of its objections to the findings and recommendations (Doc. No. 88) is denied as having been rendered moot by this order; and

7.    This action is stayed pending arbitration at this time.  The Court will dismiss this case on July 15, 2024, unless new authority requires that the stay be extended for so long as the arbitration proceedings are ongoing and the parties are directed to notify the court on or before July 15, 2024 of any such new authority.

IT IS SO ORDERED.

Dated:   **February 9, 2024**            _____

UNITED STATES DISTRICT JUDGE